MARTHA J. DARKS et al., Respondents, v. SCUD-DER-GALE GROCER COMPANY, Appellant.

Springfield Court of Appeals, June 6, 1910.

1. EVIDENCE: Witnesses: Death of Agent of Contracting Corporation: Right of Other Party to Testify. One who contracts with the authorized agent of a corporation is not a competent witness as to such contract or the admissions and declarations of the agent after the latter's death; but the living witness is disqualified only from testifying to matters in his own favor. He is not disqualified from testifying against himself nor about matters concerning which he has no interest.

2. CONFLICT OF LAWS: Death by Wrongful Act: Sale of Poisonous Drug: Accrual of Cause of Action. A merchant in Oklahoma ordered from a wholesale grocer in St. Louis, through a commission broker in Oklahoma, several bottles of ginger extract. The order was shipped to the merchant and he took some of the extract for medicine, from the effects of which he died. Wood alcohol, a deadly poison, had been used in making the extract. Held, that the cause of action, if any, against the wholesale grocer for the death of the merchant accrued in Oklahoma and not in Missouri.

3. **DAMAGES: Death by Wrongful Act: Evidence: Character of Deceased.** In a suit by the widow and children for damages for the death of the husband and father, where the cause of action accrued in a State where pecuniary damages were allowed, it is proper to admit in evidence the character of deceased, his business habits and the interest that he took in his family.

4. **NEGLIGENCE: Sale of Poisonous Drug: Liability of Dealer to Third Party.** A manufacturer or dealer will be held liable to one injured by a poison sold by him for a harmless compound, even though such injured person was not the purchaser of the compound from the dealer, provided the injury complained of was the direct, natural and probable consequence of the dealer's negligence in preparing the poisonous article.

5. ———: ———: ———: **Negligence as a Matter of Law: Instructions.** The defendant, a wholesale grocer, sold to a merchant, through a commission broker, several bottles of ginger extract. The agent at the time represented to the merchant that the article was pure ginger manufactured by the defendant, and that it was good to use as a medicine. The extract sold had been prepared by a manufacturing chemist and purchased from him by the defendant, and the defendant's label had been placed thereon and the arcticle was guaranteed by the defendant, and when properly prepared was harmless. In putting up the ginger the chemist had used, unknown to the defendant, wood alcohol, a poison. The merchant drank the extract for medicine and died from the effect of the poison. *Held*, that defendant was negligent as a matter of law.

6. ———: ———: ———: ———: **Poisonous Article Labeled Harmless.** If a manufacturer or dealer in drugs puts a label upon an article intended to be taken into the human system, indicating that it is harmless, and the label is false and the article poisonous, then as a matter of law, he is liable as proof of this fact is proof of the negligence, and it is not necessary to submit to the jury the question of whether such an act is negligence.

7. ———: ———: ———: **Dangerous Article Represented to be Harmless.** Where a person selling an article represents to the purchaser that it is wholesome and pure, and that it is good to take into the human system, and it is proven that the representation was false and that the article was a deadly poison, and that a person relying upon the statement, purchases the article and uses it for the purpose for which it had been sold and is injured thereby, the seller is liable, as a matter of law.

8. ———: ———: ———: **Preservation of Human Life: Public Policy.** For reasons of public policy for the preservation of

life and health, the law deems it wise that anyone who engages in the business of selling provisions for domestic use, should himself examine and know their fitness for such use, and be liable for lack of such knowledge.

9. **PRINCIPAL AND AGENT: Fraud of Agent Imputed to Principal: Liability to Third Party.** Any fraud perpetrated by the agent on a third party in the course of his employment, and for the benefit of the principal, must be imputed to the principal, whether or not the latter had actual knowledge of it.

10. ———: ———: ———: **Public Policy.** The liability of the principal for his agent's tort is not based upon any presumed authority in the agent to do the act, but upon public policy, for the reason that it is more reasonable when one of two innocent persons must suffer from the wrongful act of a third that the principal who has placed the agent in the position of trust and confidence should be the one to suffer, rather than a stranger.

11. **Actions: Actions Ex Delicto: Sale of Poisonous Article: Nature of Warranty.** Where an article is sold as being harmless and is guaranteed to be pure and good for medicine, and it turns out to be poisonous and results in the injury or death of the party purchasing it, who took the same as a medicine, an action will lie in tort for the damages for in such a case the warranty is a constructive fraud, like a false representation.

Appeal from St. Louis City Circuit Court.—*Hon. Virgil Rule,* Judge.

AFFIRMED.

*Jones, Jones, Hocker & Davis* for appellant.

(1)    There was a fatal variance between the allegations and the proof in that the petition alleged the case in tort, whereas the proof showed nothing more than a breach of warranty (express or implied). Glenn v. Hill, 210 Mo. 299. (2)    The court erred in giving the first instruction for plaintiffs. Brown v. Marshall, 47 Mich. 576; Akers v. Overbeck, 18 Miss. 198; Howes v. Rose, 13 Ind. App. 674; Hackett v. Pratt, 52 Ill. App. 346; Thompson on Negligence, sec. 827; Clement v. Crosby & Co., 111 N. W. 745; Gould v. Woolen Co., 147

Mass. 315. (3) The court erred in permitting plaintiff to prove that Darks took a pride in his home and was affectionate, kind and indulgent to his family. Williams v. Edwards, 94 Mo. 447; Bank v. Payne, 111 Mo. 291; Walterman v. Schurick, 102 Mo. App. 133; Edwards v. Warner, 84 Mo. App. 200; Jackson v. Smith, 118 S. W. 659.

*Johnson, Houts, Marlatt & Hawes* and *W. W. Wood* for respondent.

(1) The defendant having sold the ginger as its own "Buffalo Brand" of pure ginger and under its guaranty, and its salesman having represented that it was manufactured by defendant, its liability is exactly the same as if it had itself manufactured the ginger. Heiser v. Kingsland Mfg. Co., 110 Mo. 605; Thomas v. Winchester, 6 N. Y. 397; Packing & Provision Co. v. Tilton, 87 Ill. 555. (2) The instructions correctly submitted the negligence of defendant to the jury. Young v. Oil Co., 185 Mo. 662; Bishop "Non-Contract Law," 413; Minner v. Scherpich, 5 N. Y. S. 85; Brunswig et al. v. White, 70 Tex. 507; Knoefel v. Atkins, 40 Ind. App. 438. (3) The measure of damages laid down by the instruction on the measure of damages was correct. The tort was committed where the injury was suffered; that is, in the Indian Territory. 2 Wharton "Conflict of Laws," 1129; Rundell v. La Companie Generale, 100 Fed. 655; Cameron v. Vandergriff, 53 Ark. 381; Railroad v. Carroll, 97 Ala. 134. (4) The amount of the recovery is fixed by the *lex loci delicti*. Railroad v. Babcock, 154 U. S. 190; 2 Wharton "Conflict of Laws," 1110; Railroad v. Brown, 67 Ark. 301; Hanna v. Railroad, 41 Ill. App. 130. (5) Mr. Williams was a competent witness as to representations made by Rizer, defendant's agent. R. S. 1899, sec. 4652; Thompson v. Brown, 121 Mo. App. 528; Howard v. Hardy, 128 Mo. App. 353. (6) The evidence admitted as to the in-

terest and pride which Mr. Darks took in his family was proper, as it had a direct bearing on the probably pecuniary loss sustained. Railroad v. Sweet, 60 Ark. 559; Gamache v. Tin Foil & Metal Co., 116 Mo. App. 602.

GRAY, J.—The plaintiffs are the widow and minor children of Roscoe C. Darks, deceased, who lived and died at Wetumka, Oklahoma, where, during his lifetime, he conducted a general merchandise and grocer business in partnership with one Williams, under the firm name of Williams and Darks. The defendant is engaged in the wholesale grocer business at St. Louis. E. W. Rizer, at the times hereinafter mentioned, was doing business at Muskogee, Oklahoma, as a merchandise broker, and under the name of E. W. Rizer & Co. Mr. Rizer, as such broker, had from time to time sold goods for the defendant as an ordinary broker on commission. The defendant paid him no salary, and limited him to no territory, but he sold goods for the defendant and for other merchants. On August 19, 1904, Rizer obtained from Williams and Darks an order for merchandise amounting to $16.13. In this order was included one dozen four-ounce bottles of ginger extract. The order directed the shipment to be made via the Frisco Railroad from St. Louis. In due time the order was mailed and the defendant accepted and the goods delivered to the railroad company and shipped to Wetumka, and received by Williams and Darks. On the 25th day of October, following, Mr. Darks died, as the testimony shows, from the result of wood alcohol poisoning.

This action was brought in the circuit court of the city of St. Louis, by the widow and children, for the death of Mr. Darks, and judgment was rendered against the defendant in the sum of five thousand dollars, from which this appeal is prosecuted.

The petition charges that the defendant represented to Williams and Darks that the extract sold was of its own manufacture; that extract of ginger is generally used for medicinal purposes, and is wholly harmless when properly prepared and used for said purposes, and that the same was purchased by Williams and Darks for use and sale in their trade at Wetumka, Oklahoma; that Mr. Darks, being slightly indisposed and feeling the need of medicine, mixed the ginger bought from the defendant with water and drank the same in moderate quantities, and as a result thereof, died.

The petition further charges that the ginger sold by the defendant was prepared of wood alcohol, and was a deadly poison, and that the same was prepared and manufactured by the defendant, and that the death of Darks was due to the wrongful and careless act of the defendant in selling to said Darks said poisonous liquid. After setting out Lord Campbell's Act as it appears by the Statute in force in the Indian Territory, as the same was declared to be in force in that territory by the act of Congress, May 2nd, 1890, the petition concludes, by charging that the death of said Darks was caused by the wrongful, wanton, and careless act of the defendant, and that plaintiffs have been damaged thereby in the sum of $20,000.

The answer consisted of a general denial and also of a plea of contributory negligence, in that it was charged that Mr. Darks came to his death by reason of carelessly and negligently taking and drinking large quantities of the extract mentioned in plaintiff's petition.

There is not much dispute about the facts. Although the petition charges that the extract of ginger was in fact prepared and manufactured by the defendant, the testimony shows it was not made by the defendant, but by one Shelley, doing business as the Shelley Manufacturing Company. Mr. Shelley was a chemist and had been for years engaged in the manu-

facture of flavoring extracts, and the defendant bought this extract from him in the regular course of trade. If the result turned on the question whether the defendant was guilty of negligence in selecting Mr. Shelley as a proper person to trust in the preparation of such articles, the plaintiff's case was not proven. The evidence shows for many years Mr. Shelley had been engaged in the business of preparing such extracts, and he was considered competent in every particular.

When the defendant received an order for extracts, if it did not have the same on hand, they were ordered, generally, from Mr. Shelley. The extracts were put in bottles containing about 2 1-2 to 2 3-4 ounces of liquid, about ten per cent of which was oleo-resin of ginger, and about eighty-five per cent Columbian spirits, or wood alcohol. The bottles were packed in boxes after being labeled, with a label furnished by the defendant, and delivered to the defendant enclosed in the boxes, so that the defendant made no examination of the bottles. There was no proof that the defendant, or any of its officers had any knowledge of the ingredients used in compounding the extract. On the contrary, it was affirmatively shown that they had no such knowledge, but bought the extract from a reputable, or presumptively reputable, compounder, and disposed of the extracts in the original packages in the regular course of trade.

Mr. Shelley was offered as a witness by the defendant, and testified that he was a graduate in pharmacy; that he had worked in wholesale drug stores, and that he was a manufacturing chemist, and had been for many years; that for eight years previous to the sale of the extracts in question, he had prepared for the defendant and other wholesale dealers in St. Louis, lemon, vanilla, pineapple, ginger, and many other extracts; that in preparing his extracts he used the Columbian Spirits purchased from Meyer Brothers drug store in St. Louis, and that he had been using the Columbian Spir-

its for two years; that the extract is a flavoring extract and was not manufactured as a medicine; that it was not intended as a medicine or a beverage, if it had been, he would have labeled it such and prescribed the amount to be taken as a dose, and that so long as it was used for the purposes for which it was manufactured, it was harmless, and if Mr. Darks took enough to kill him, and was using it for a beverage, he was using it for a purpose for which it was not intended.

The invoice of the goods shipped and sent to Williams and Darks contained the following: "All goods bearing our Buffalo Brand are guaranteed." On the bottles containing the ginger extract, was a label as follows: "Buffalo Brand Pure Ginger. Scudder-Gale Grocer Co., St. Louis." And in addition thereto, the head of a buffalo was printed on each bottle.

The evidence shows that at the time Williams and Darks carried a general line of merchandise, including a few medicines and sundry drugs; that when Mr. Rizer called to sell them the goods, and at the time they ordered the same from him, he showed them a sample bottle of the extract and stated that it was used as a medicine, and that it was of defendant's own manufacture.

The testimony of the plaintiff tends to prove that Mr. Darks was not feeling well, and that he concluded to take some of the extract of ginger ordered from the defendant, and poured it into a bottle containing water, and drank therefrom two or three times, and he became sick and died from poison contained in the extract, to-wit: wood alcohol.

On the part of the defendant, the testimony tends to show that the deceased was not using the extract simply as a medicine, but that he was a drinking man and used it as a beverage, and offered it to his friends and stated that it was "pretty good."

It may further be said that the Columbian Spirits was deodorized wood alcohol, and that wood alcohol

has an entirely different effect upon the system than grain alcohol. The grain alcohol when taken into the system is carried away by the organs of the body, while wood alcohol remains in the system, and even small doses of it taken from time to time, will finally result in death. Mr. Shelley gave his reason for using Columbian Spirits, that it was cheaper, and that he did not know that it was poisonous, and relied upon the fact that he had purchased the spirits for the purpose of using the same in making his extracts, and that the purchase was made from a reputable dealer, who knew the purposes for which he was purchasing the same.

The court permitted Mr. Williams to testify to statements made by Mr. Rizer at the time the extracts were ordered. The evidence shows Mr. Rizer was dead, at the time of the trial, and it claimed on account thereof, that Williams being a party to the contract, was not competent.

This position is based upon the law as declared in Williams v. Edwards, 94 Mo. 447, 7 S. W. 429, wherein it is declared that "one who contracts with the authorized agent of a corporation is not a competent witness as to such contract, or the admissions and declarations of the agent after the latter's death." The reason for the rule is clearly and plainly stated by Judge SHERWOOD in that case, as follows: "The object of the statute is to guard against false testimony by the survivor, and in order to do this, it establishes a rule by which, when the lips of one contracting party are closed by death, the lips of the other party are closed by law. A corporation can only speak and act through agents, and if, after the death of an agent of a corporation, it were admissible for a party to come in and testify to a contract made with such deceased agent, it is easy to see that corporations would be without protection where others, in like circumstances, are fully protected."

In Drew v. Railroad, 129 Mo. App. 466, 107 S. W. 478, the Kansas City Court of Appeals declares that

the statute does not apply in an action *ex delicto,* but is limited to actions on contracts.

We fail to see the difference in principle, whether the action be on the contract, or in tort. If in either case, the terms of the contract are a material issue to be determined, then it seems to us the same rule should apply. It is not necessary, however, to determine this question, as we put our holding on another theory. The statute provides in actions where one of the original parties to the contract or cause of action in issue and on trial, is dead, the other party to such contract or cause of action shall not be permitted to testify either in his own favor or in favor of one party to the action claiming under him. The statute does not entirely refuse permission to the living party to testify. It disqualifies the living witness from testifying to matters in his own favor. He is not disqualified from testifying against himself, nor about matters concerning which he has no interest. The purpose of the statute is correctly declared by Judge SHERWOOD as above set forth.

Mr. Wlliams had no interest in the case being tried at the time he was offered as a witness. He was in no wise affected by the result of the litigation, and therefore, he was not testifying in his own behalf. We believe he was a competent witness under the rulings declared in Thompson and Thompson v. Brown, 121 Mo. App. l. c. 529, 97 S. W. 242; Bank v. Hunt, 25 Mo. App. 170; Ford v. O'Donnell, 40 Mo. App. 51; Bridges v. Bell, 13 Mo. 69; Angell v. Hester, 64 Mo. 142; Matter of Potter, 161 N. Y. 87; Neish v. Gannon, 198 Ill. 223; Lasseter v. Simpson, 78 Ga. 61.

It is also urged by appellant that the court should have limited the measure of the recovery to five thousand dollars. At the time the suit was commenced, our statute limited the amount of recovery in such cases to five thousand dollars, and appellant claims that the goods were sold in St. Louis and delivered to the defendant when placed on the cars, according to the terms of the

order, and the cause of action accrued in that city. We have been cited to no authorities to sustain this contention. On the contrary, the great weight of authority is with the respondent. [2 Wharton on "Conflict of Laws," 1129; Rundell v. LaCompanie, etc., 100 Fed. 655; Cameron v. Vandergriff, 53 Ark. 381; Railroad' v. Carroll, 97 Ala. l. c. 134; Railroad v. Babcock, 154 U. S. 190; Railway Co. v. Brown, 67 Ark. l. c. 301.]

The court permitted respondent to offer evidence showing the business habits of Mr. Darks and his interest in his family, and his conduct toward the different members thereof. The appellant claims such evidence was not admissible. It is true that the plaintiff's right to a recovery in this case is by law limited to the pecuniary damages sustained. In determining the amount of the pecuniary damages it seems to us that the kind and character of a husband and father for whose death damages is sought, is certainly a matter to be considered, and our contention is supported by authorities. [Gamache v. Tin Foil & Metal Co., 116 Mo. App. l. c. 602, 92 S. W. 918; Railway Co. v. Haist, 71 Ark. 267; 13 Cyc. 371.]

The appellant's main point on this appeal is presented in its following assignment of errors: "The court should have directed a verdict in favor of the defendant for the following reasons: The action is in tort, the tort alleged being the wrongful sale of the poisonous compound, and there was no proof of the facts necessary to establish such tort, i. e., knowledge that the compound was poisonous, and no proof of the facts from which the jury could find the alternative of knowledge, to-wit, a reckless selling, with no knowledge. There was a fatal variance between the allegations and the proof in that the petition alleged the case in tort, whereas the proof showed nothing more than a breach of warranty."

The question of the liability of a manufacturer and dealer in food products to persons to whom the same

are sold, and also to third persons using the same, has
been thoroughly discussed by the courts in this country.
In addition thereto, the authorities have been recently
collected and carefully briefed by writers in the follow-
ing law books and journals: Note to Tomlinson v. Ar-
mour & Co., 19 L. R. A. (N. S.), 923; McKibban v. Bax,
13 L. R. A. (N. S.) 646, and note to Tomlinson v.
Armour & Co., 67 Central Law Journal 380.

The leading case in this country is Thomas v. Win-
chester, 2 Seldon N. Y. Court of Appeals Reports, 397.
In that case, Mrs. Thomas, being ill, her physician pre-
scribed a dose of dandelion.    Her husband purchased
what was believed to be the prescribed medicine at the
store of Dr. Foord, a physician and druggist.    Mrs.
Thomas took  some of the medicine with very alarming
effects.  The medicine administered was belladonna and
not dandelion.   The jar from which it was taken was
labeled "dandelion, prepared by A. Gilbert, New York."
It was sold for and believed by Dr. Foord to be the ex-
tract of dandelion, as labeled.  Dr. Foord purchased the
article as dandelion from  Mr. Aspinwall, a New York
druggist.  Mr. Aspinwall bought it of the defendant as
an extract of dandelion.   The defendant was engaged
in New York in the manufacture and sale of extracts
for medical purposes, and Gilbert was a person em-
ployed by the defendant at a salary.  The jars  were
labeled in Gilbert's name, because he had previously
been engaged in the same business on his own account,
and because his labels rendered the articles more salable.
The defendant claimed there was no liability because
there was no privity of contract between him and the
plaintiff and cited many authorities in support of his
position.  The court ruled against him and said: "In
respect to the wrongful character of the negligence com-
plained of, this case differs widely from those put by
the defendant's counsel.  No such imminent danger ex-
isted in those cases.  In the present case the sale of the

146 App.—17

poisonous article was made to a dealer in drugs, and not to a consumer. The injury, therefore, was not likely to fall on him, or on his vendee, who was also a dealer; but much more likely to be visited on a remote purchaser, as actually happened. The defendant's negligence put human life in imminent danger. Can it be said that there was no duty on the part of defendant, to avoid the creation of that danger by the exercise of greater caution, or that the exercise of that caution was a duty only to his immediate vendee, whose life was not endangered? The defendant's duty arose out of the nature of his business and the danger to others incident to its mismanagement. Nothing but mischief like that which actually happened could have been expected from sending the poison falsely labeled into the market; and the defendant is justly responsible for the probable consequences of the act. The duty of exercising caution in this respect did not arise out of the defendant's contract of sale. The wrong done by the defendant was in putting the poison, mislabeled, into the hands of Aspinwall as an article of merchandise to be sold and afterwards used as the extract of dandelion, by some person then unknown."

That case is cited by our Supreme Court in the case of Heizer v. Kingsland & Douglas Mfg. Co., 110 Mo. 605, 19 S. W. 630, and our court, after citing the New York and other authorities, correctly declares: "The difficulty in the practical administration of the law is to fix upon the dividing line between those cases where the duty begins and ends with the contract, and where the law imposes a duty to third persons notwithstanding the contract."

In Bishop on Non-Contract Law, sec. 413, it is said: "It is a nuisance, which is also treated as negligence, to send out into the community a thing liable to be used by persons ignorant of its nature to their injury."

In Clement v. Crosby & Co., decided by the Supreme Court of Michigan in 1907, the plaintiff purchased

certain inflammable stove polish manufactured by Crosby & Co. from a retailer, and was injured while polishing a range. The court held where a manufacturer placed on the market a stove polish that was dangerously inflammable and the plaintiff purchased the same without being warned and was injured while using the same, the manufacturer was liable; that it was the duty of the manufacturer to know the properties of the polish and to warn the public of its dangerous qualities. The court cites the following authorities: "Churchill v. Holt, 127 Mass. 165, 34 Am. Rep. 355; Bryant v. Bigelow Carpet Co., 131 Mass. 503; Hawksworth v. Thompson, 98 Mass. 77, 93 Am. Dec. 137; Colgrove v. N. Y., N. H. Co., 20 N. Y. 492, 75 Am. Dec. 418; Boyd v. Watt, 27 Ohio St. 268; Matthews v. Del., etc., 56 N. J. Law 35, 27 Atl. 919, 22 L. R. A. 261."

A leading case is McCaffrey v. Mossberg Mfg. Co., 23 R. I. 381, 55 L. R. A. 822, 91 Am. St. Rep. 637, 50 Atl. 651, in which the court divides into three classes the cases involving the liability of a manufacturer to parties with whom he had no privity in contract, as follows: "First, where the thing causing the injury was of a noxious or dangerous kind, upon the principle that one who dealt with an imminently dangerous article owed a public duty to all to whom it might come, and whose lives might be endangered thereby, to exercise caution adequate to the peril involved." This principle the court said is based upon the duty which the law imposes upon every one to avoid acts which in their nature, are dangerous to the lives of others.

In Tomlinson v. Armour & Co., the Supreme Court of New Jersey in 1908, reviewed the authorities in this country, and concluded therefrom that irrespective of the presence or absence of contracts or obligations arising out of the dealings between manufacturer and retailer and between retailer and consumer, the manufacturer is under a duty to him who in the ordinary course of trade becomes the ultimate con-

sumer, to exercise care that the goods which he puts into cans and sells to the retail dealers, to the end that such dealers may sell the same to customers and patrons, are wholesome and fit for food, and not tainted with poison.

The greater part of the discussion of the question has been devoted to the liability to third persons, and not to the liability to the immediate purchaser.

Without further citing the authorities or discussing the question, we conclude that the law is correctly declared in Tomlinson v. Armour & Co., and Thomas v. Winchester, and that the law is, that a manufacturer or dealer will be held liable to one injured by a poison sold by him, even though such injured person was not the purchaser of same from the dealer, provided the injury complained of was the direct, natural and probable consequence of the dealer's negligence in preparing the poisonous article. In support of the proposition, we cite McKibban v. Bax, 13 L. R. A. (N. S.) 646, and the note of the decisions there found; also Morrison v. Lee, 13 L. R. A. (N. S.) 650, and the authorities there cited; Tomlinson v. Armour & Co., 19 L. R. A. (N. S.) 923, and a note to that case therein contained; and note to the decision found in Tomlinson v. Armour & Co., 67 Central Law Journal 380.

The one remaining question relates to the instructions given by the court. In the first instruction given in behalf of plaintiff, the following elements are submitted: "The relationship of plaintiffs to deceased; the business of defendant; the business of Williams & Darks as retail grocers; the sale of the extract of ginger by defendant Williams & Darks; the representation by defendant's agent at the time of the sale that the article was pure ginger, manufactured and put up by the defendant; that such ginger was generally known to be used as a medicine, and when properly prepared was harmless; that the ginger was actually put up in wood

alcohol, a preparation dangerous to life; the drinking of the ginger by Darks and the result, his death.

It will be noticed the instruction contains no element of knowing misrepresentation or negligence on the part of the defendant. In other words, the instruction does not require the jury to find that the acts complained of constitute negligence. It simply states if the jury find the above facts, they shall find a verdict for the plaintiff. The word "negligence" or any kindred word, is not found in the instruction.

Unless the conduct of the defendant, as shown by the uncontradicted evidence, was negligence, so that the court had the right to declare the acts to be such as a matter of law, it was error to give the instruction.

Without reviewing again the authorities above cited, it may be stated therefrom that the action in this class of cases is in tort, and not in contract. It will also be seen that in some cases the court is justified in declaring the act to be negligence as a matter of law. If a manufacturer or dealer in drugs puts a label upon the article indicating that it is harmless, and the label is false and the article poisonous, then as a matter of law, he is liable as proof of the fact is proof of the negligence, and it is not necessary to submit to the jury the question of whether such an act is negligence.

In this case it is shown by plaintiff that the defendant's agent at the time he sold the extracts, said they were manufactured by the defendant. Upon the invoice, showing the sale of the articles, there was written the statement that all goods bearing the Buffalo Brand of defendant are guaranteed, and the bottles containing the extract were labeled "Buffalo Brand Pure Ginger. Scudder-Gale Grocer Company."

In cases wherein the manufacturer knows that the article is dangerous or poisonous, then there is no question but what he is guilty of negligence in sending it out to be used, unless he had properly labeled it, so that persons handling it may know of the danger in its use.

[Lewis v. Terry, 111 Cal. 39, 31 L. R. A. 220.]    In this case the defendant purchased the extract from a reliable dealer and without any knowledge that there had been any change in the formula used in preparing the extract from that used in the previous preparation of the article for by the manufacturer for the defendant's use.

In Brown v. Marshall, 47 Mich. 576, the plaintiff desiring to take epsom salts as a medicine, sent her sister to the store of defendant, druggist in the same city, to procure the salts for her.    The sister called for epsom salts and was waited upon by defendant's clerk, who delivered to her what he said was the article she called for.    The plaintiff, after dissolving the same in water, took a portion thereof, and was immediately taken seriously sick, and it was later determined that the defendant's clerk had given her white vitriol instead of the salts called for.

The court in that case, as here, omitted to include in the plaintiff's instruction, negligence as an element in the right to recover, and the court said: "The judge, instead of submitting the mistake to the jury as something in itself necessary to constitute a cause of action, should have submitted it as a matter of evidence on the question of negligence of the cogency of which it was their right and duty to judge."    And the case was reversed because the court omitted from its instruction the element of negligence.

The appellant has called our attention to the case of Akers v. Overbeck, 18 Misc. (N. Y.) 198.    The plaintiff in that case was a coffee roaster, defendant a grocer, who had sent him bags of coffee to roast.    In one bag was a twenty-six-pound stone, which damaged plaintiff's coffee roaster and he sued for damages.    The court said: "The question is, were the defendants negligent in failing to inspect the bag before its delivery to plaintiff with a view to a discovery of this foreign substance? The answer must be that they were not."

In Craft v. Parker Webb & Co., 96 Mich. 245, 21. L. R. A. 139, plaintiff brought suit in an action for negligence in selling a piece of bacon which he alleges was spoiled and unfit for food, and from the effects of which he became sick. The court directed a verdict in favor of the defendant on the ground that there was no negligence shown on the part of the defendant. The court reversed the trial court and declared that in such cases, it is a question for the jury and not the court, to determine whether the defendant exercised due care.

The above cases differ from the case at bar in one particular. In this case the plaintiff's testimony showed, and the jury were required to find that the agent of defendant in making the sale, represented that the article was good for medicine, and it was manufactured by the defendant. The defendant claims that the article was not for medicinal purposes, but for flavoring purposes only. This, under the evidence, was something the deceased did not know, but on the contrary, he had been advised that the extract was good as a medicine. If the defendant is liable for the representations of its agent in making the sale to Williams and the deceased, then it seems to us that it was negligence *per se* for the agent to represent that an article containing eighty-five per cent of wood alcohol was a good medicine.

In 3 Blackstone, p. 165, it is declared that in contracts for provisions it is always implied that they are wholesome, and if they are not wholesome, an action on a case for deceit, lies against the vendor.

In Sinclair v. Hathaway, 57 Mich. 60, it is declared: "Where the seller prepares the article himself, then he knows or should know how the article is prepared, and if not properly prepared, there certainly would be no injustice in holding that he is responsible.

In the Encyclopedia, page 1238, the doctrine is laid down that in all cases in the sales of food for domestic use, an implied warranty exists, that they are fit for use and wholesome."

In Huset v. Threshing Machine Co., 120 Fed. 865, Judge SANBURN collects all the authorities and reviews them, and declares: "It is a general rule that a contractor, manufacturer or vendor is not liable to third persons for negligence in the construction, manufacture, or sale of the articles he handles. To this general rule there are three well-known exceptions. The first is, that an act of negligence of a manufacturer or vendor, which is imminently dangerous to the life or health of mankind, and which is committed in the preparation or sale of the article intended to preserve, destroy or affect human life, is actionable by third parties who suffer from the negligence." And cited a long list of authorities in support of the proposition.

So carefully have the courts regarded these exceptions, that in Lukens v. Freiund, 27 Kans. 664, 40 Am. Rep., the court held, that in the absence of actual negligence on his part, the miller is not liable upon an implied warranty, for injury to cattle from bran bought from him in which, without his negligence, pieces of metal had accidently fallen, but the court said it would be otherwise in case of food for human beings. And said, relating thereto: "One may not place poison where it is likely to be taken by one ignorant of its qualities. Regard for human life compels this."

The same ruling is made by the Supreme Court in Clement v. Rommeck, 149 Mich. 595, 113 N. W. 286. In that case the action was against the merchant who had sold stove polish to a customer who was injured in attempting to use it. The court said: "It is sought to liken the case to the sale of an article of food in which it is held that the sale to a consumer carries with it an implied warranty of the wholesomeness of the food. We are not aware that the rule of these cases has been extended to the sale of commodities like stove polish."

In Watson v. Brewing Co., 1 L. R. A. (N. S.) 1178, a manufacturer made and bottled for consumption, a beverage represented to be harmless and refreshing.

The manufacturer had sold cases of his product to a merchant. Some of the beverage was, with the permission of the merchant, taken from the stock by the plaintiff and drunk from the bottle. In the bottle were three pieces of glass, which the plaintiff swallowed and suffered injuries thereby. In passing upon the liability of the manufacturer, the court said: "When a manufacturer makes, bottles and sells to the retail trade, a beverage representing to be refreshing and harmless, he is under a legal duty to see to it that in the process of bottling, no foreign substance shall be mixed with the beverage, which, if taken into the human stomach, will be injurious. The composition of patent or proprietary medicines is usually shrouded in mystery and it is generally understood that many such remedies contain ingredients which, if taken in sufficient quantities, will produce injurious results upon the person taking them. If, then, one who buys a patent medicine may rely upon the obligation of the manufacturer not to place therein ingredients which, if taken in prescribed doses, will injure his health, certainly the purchaser of an alleged harmless and refreshing beverage should have the right to rest secure in the assumption that he will not be fed on broken glass."

In the case of Blood Balm Co. v. Cooper, 83 Ga. 457, 20 Am. St. Rep. 324, the doctrine just announced is discussed and endorsed."

In Norton v. Sewall, 106 Mass. 143, 8 Am. Rep. 298, it is held that an apothecary who had sold a deadly poison for a harmless medicine, was liable for the death of the person to whom it was administered.

In Cameron v. Mount, 56 N. W. 1094, the plaintiff bought a horse of the defendant for his wife to drive, and the defendant represented to the plaintiff that the horse was kind and gentle, free from tricks and perfectly safe for plaintiff's wife to drive. The plaintiff purchased the horse and when his wife was driving it, it ran away and permanently injured her, and the action

was for damages in the sum of three thousand dollars. There was no evidence in the case that the defendant knew that his representations concerning the safety of the animal, were false. The action was in tort and not on the contract. The point was made that the defendant did not know that his representations were false. The court said: "To sustain an action on such a warranty, there is no more necessity to prove that the defendant knew that his statement was false, than in the other case of a warranty. The action on a warranty in the sale of personal property is on the contract. The action on a warranty relating to other matters or transactions is in tort, and the warranty is a constructive fraud like a false representation. The law holds a contracting party liable as for a fraud on his express representations concerning facts material to the treaty, the truth of which he assumes to know, and the truth of which is not known to the other contracting party where the representations are false, and the other party relying upon them, has been misled to his injury. In such a case the law holds a party bound to know the truth of his representations. Whoever pretends to a positive knowledge of a particular fact, when he does not know it, and represents such fact to be true in order that another may rely upon it and act upon it, and does rely and act upon it, and damages flow from the false representation, the person making it is guilty of willful deception and fraud. If a man having no knowledge whatever on the subject takes it upon himself to represent a certain state of facts to exist, he does so at his peril. Such warranties constitute a class of frauds exceptional to the common cases of mere false representation where an intent to defraud and a knowledge that they were false must be proved. The representations and warranty in this case have all the accompanying ingredients to make it an actionable fraud." The court, after citing several authorities, sustains the plaintiff's cause as one in tort.

The courts of this State have announced the rule as above stated. [Western Cattle Brokerage Co. v. Gates, 190 Mo. 391, 89 S. W. 382; Serrano v. Miller Commission Co., 117 Mo. App. 185, 93 S. W. 810.]

From the authorities above cited, and also in reason, we believe the law is and should be that where a person selling an article represents to the purchaser that it is wholesome and pure, and that it is good to take into the human system, and it is proven that the representation is false and that the article was a deadly poison, dangerous to human life, and that a person relying upon the statement, purchases the article and uses it for the purposes for which it has been sold and is injured thereby, the seller should be liable as a matter of law.

In this case it must be remembered and considered that defendant was a well-known grocery house, located with an established business in one of the largest cities in the country. It had adopted a special brand which it used in selling its guaranteed articles. Dealers were informed that any article bearing the "Buffalo Brand" was guaranteed to be pure. The agent or broker of this well-known wholesale house represented to the deceased that the article bore this brand, and showed him a sample thereof; that it was of the defendant's own manufacture and was good as a medicine. The statement was not unreasonable, as the evidence shows that ginger extracts are used by persons for certain ailments, and it is not uncommon for them to be used as a medicine.

The jury has found that the deceased did not take the extract as a beverage (as this matter was submitted by proper instruction), but that he took the same for medicinal purposes, and as a result thereof, lost his life. The jury were required to find these facts before returning a verdict in favor of the plaintiff.

The liability of this class of cases has not always been placed by the courts upon the same basis. We believe, however, that the reason assigned by the Su-

preme Court of Kansas, as follows, is sufficient: "For reasons of public policy for the preservation of life and health, the law deems it wise that any one who engages in the business of selling provisions for domestic use, should himself examine and know their fitness for such use, and be liable for a lack of such knowledge."

The appellant maintains that the defendant is not responsible for the representations made by its agent in selling the extracts, as the evidence shows he had no authority to make the same.

Any fraud perpetrated by the agent on a third party in the course of his employment, and for the benefit of the principal, must be imputed to the principal, whether or not the latter had actual knowledge of it. [Keyser v. Kinkle, 127 Mo. App. 62, 106 S. W. 98; Judd v. Walker, 215 Mo. 312, 114 S. W. 979.]

The defendant permitted the agent to go into the field and solicit orders. In soliciting business for the defendant, questions would naturally come up concerning the quality and usefulness of the articles the agent was attempting to sell, and therefore, statements made by the agent concerning the quality of the articles and the purpose for which they were intended, must be within his apparent authority.

The liability of the principal for his agent's tort is not based upon any presumed authority in the agent to do the act, but upon public policy, for the reason that it is more reasonable when one of two innocent persons must suffer from the wrongful act of a third person that the principal who has placed the agent in the position of trust and confidence should suffer than a stranger. [Herald v. Bryan, 195 Mo. 574, 92 S. W. 902; Baree v. City of Cape Girardeau, 197 Mo. 382, 95 S. W. 330; Heath v. Schroer, 119 Mo. App. 93, 96 S. W. 313.]

It is also claimed by the appellant that the instruction of the court and the law, as we have declared it, relates to actions on contract and not in tort; that the petition in this case pleads the contract, and, there-

fore, the action is in contract. The answer to this will be found in Armelio v. Whitman, 127 Mo. App. 698, 106 S. W. 1113; Cooley on Torts, page 90; Hales v. Raines, this day decided by this court.

In holding that the defendant is liable for negligence, as a matter of law, we have not overlooked the rule declared in this State as follows: "Even where the evidence is all one way, if it is of such a character that reasonable minds might differ with respect to it, the case is still one for the consideration of the jury. [Hamman v. Coal & Coke Co., 156 Mo. 233, 56 S. W. 1091; Johnson & Co. v. Springfield Ice & Refrigerator Co., 127 S. W. 692, decided by this court May 3, 1910.]

We only hold that if the jury found the facts as alleged in plaintiff's instruction No. 1, then the defendant was guilty of negligence, as a matter of law.

Having examined all the assignment of errors found in appellant's brief, and having reached the conclusion that the record is without substantial error, we will affirm the judgment. All concur.