CARLENE McCOLLUM, by Curator, v. WINNWOOD AMUSEMENT COMPANY and WINNWOOD DEVELOPMENT COMPANY, Appellants.—59 S. W. (2d) 693.

Division One, April 20, 1933.

*Thomas P. Burns, Inghram D. Hook* and *Paul C. Sprinkle* for appellants.

*C. K. Hart, C. W. Prince, James N. Beery* and *Clyde J. Linde* for respondent.

STURGIS, C.—Plaintiff, a girl about twelve years old at the time of her injury, brought suit by her curator and recovered a judgment for ten thousand dollars in a jury trial against the two defendants for personal injuries alleged to have been caused by defendants' negligence, and defendants have appealed.

Defendant Amusement Company operated an outdoor amusement park a few miles north of Kansas City, in Clay County, of which the defendant Development Company was the owner, and at this park plaintiff was injured by having her leg broken in attempting to go, or slide, down a slide maintained and operated by defendants for the amusement of patrons. The negligence alleged is in the construction of this slide, a wooden structure about twenty-five feet high. The sliders ascended a stairway to the height of about twenty-five feet where the slide proper began, first on a level and then down-

ward at an angle of about forty-five degrees, curving again near the bottom to a level and landing the sliders in the water of a lake. The slide itself was a sort of trough or chute, the metallic bottom being smooth and some twenty inches wide, with wooden sides or sideboards some eight inches high used more or less as handholds by the sliders and to prevent their going off at the sides. Water emptied from a pipe near the top and flowed down the incline or slide keeping it wet and slick.

Plaintiff's petition alleged that defendants' amusement park contained a large pool or lake of water for swimming and diving, for the use of which defendants charged a consideration; that said park contained, and the defendants constructed, maintained and operated a device or sliding chute which was maintained for the amusement of swimmers and was connected with a pool or lake of water; that said chute is approximately twenty-five feet high and of greater length; that the surface of said chute is covered with metal upon which running water is made to flow down said chute; that the top of said chute is approached by a winding stairway; that at the top or starting place of said chute there is provided a small platform and that said chute is several inches above said platform; that around said platform there is a handrailing, which railing extends across the end of said chute in an oblique manner.

Plaintiff then alleges that on or about the 21st day of July, 1928, she became a patron at said place of amusement and as such paid a consideration and entered the lake or pool referred to; that plaintiff ascended the diving or sliding chute for the purpose of sliding down the same into the water; that upon reaching the top of the chute and while so using same, the plaintiff was caused, through the negligence and carelessness of defendants, to suffer serious, painful, and permanent injuries in that plaintiff's right leg was bruised and the femur bone thereof was broken and fractured.

The carelessness and negligence of the defendants in causing said injuries are alleged to be that said chute was constructed and maintained in a faulty and defective manner in that the top or starting place was not of sufficient length and size to properly admit plaintiff's body, and was surrounded by a scaffold or railing which was open and likely to cause a person's limbs to be caught and ensnared while using the same, and particularly so because of its limited space to receive the body of a user without coming in contact with the open balustrade, which condition or construction was known to defendants in sufficient time to have remedied and changed the same.

Defendants filed their answer consisting of a general denial and alleging "that any injury of which plaintiff complains was solely and directly due to the carelessness and negligence of plaintiff in that

she slid down said slide with a portion of her body upon the body of her brother, thereby raising her body up level with the sideboards on the slide, and while in said position plaintiff carelessly and negligently permitted one leg to get outside of the slide, thereby directly causing any injury of which she complains.''

The plaintiff and her brother, much older than she, were the sliders on this occasion and were the chief witnesses in this case. Their evidence is that on the evening in question they, with their parents, went to defendants' amusement park and paid the usual admission. After being there a short time plaintiff and her older brother decided to use this slide, as many others were doing. Plaintiff had never used it before, but her older brother was thoroughly familiar with its construction and use and he led the way. Going to the top, the brother stepped from the standing place or platform along the side of the chute or slide over the eight-inch sideboard into the level part of the slide at the top and took a position in a sitting posture at or near where the slide starts to curve downward, facing backwards so as to go down on his back. His legs and feet were thus extended along the level part of the slide and by moving, or perhaps merely leaning, backwards and releasing his hold on the sideboards, gravity would take him down the slide. Plaintiff also got into the slide further away from the place of descent and at her brother's direction took a crouching position facing her brother and between his feet or knees so as to go down the slide on her stomach with her legs extended backward and upward in the descent. Plaintiff says that when she and her brother were in this position they started down the slide simultaneously, the brother going down on his back with his legs extended, and she following close behind him with her head and breast between his knees and feet; that she extended her legs backward as she started forward and downward and her right leg caught in the open balustrade or scaffold at the back end of the chute or slide, resulting in breaking her leg about half way between the knee and hip joint. Defendants' version of the accident is that the plaintiff, in making the descent of the slide, placed her body upon the body of her brother, thus raising herself higher than the sideboards of the slide or chute, and that her right leg extended over and outside of the sideboard of the chute and thus struck one of the upright supports of the chute about half way down the slide, and thus caused her injury. Both plaintiff and her brother stoutly deny that she was above and on the body of her brother in making the descent or that her right leg was outside of the chute or that it struck anything during her descent. She testified positively that her injury was received at the top of the slide just as she was starting down and by reason of her leg getting caught in the balustrade or handrailing at the top and beginning of the slide.

Defendants demurred to the evidence and insist with much earnestness that it is impossible for plaintiff to have received the injury which she did receive—the breaking of the femur bone of the leg above the knee—in the manner she claims; that the physical facts demonstrate that she could not be and was not injured in that way.

We, of course, are not to weigh the evidence as that was for the jury and it had a right to disbelieve and reject defendants' evidence to the effect that plaintiff placed herself on top of her brother in going down the slide and allowed her right leg to come in violent contact with an upright support at the side of the chute. At the same time, the jury cannot be allowed to base a verdict on evidence of an impossibility. In the absence of other errors, if the evidence supports the verdict, it must be sustained.

We have read and reread this evidence and are not able to say that it is not possible for the injury to have occurred as plaintiff and her brother say it did. The allegation is that the slide was so constructed that the top or starting place for the sliders was not of sufficient length to accommodate the body of the plaintiff and was surrounded by an open scaffold or balustrade which was likely to cause the legs of a person using the same to be caught and ensnared. The evidence of plaintiff is that the level part of the slide or chute at the top where persons stepped into the same was only two feet long on one side and three feet on the other, that is, that the eight-inch baseboards on each side were of that length, measured from the downward turn of the slide. There was a diagonal baseboard closing the diagonal end, making a sort of box with an open end at the turn downward. At the other end there were three upright posts four by four, one at each corner of the closed end and one in the middle, some two feet high with a two by four cross piece or railing at the top, forming what is called the balustrade. This left two openings above the end baseboard between these upright posts.

Plaintiff testified that her brother sat down right at the downward turn of the slide with his back toward the downward turn and his legs extended toward the closed end; that she turned around facing him and crouched down between his feet or knees so as to go down the slide on her stomach; that her back was then nearly touching the end board of the chute and balustrade and there was not room sufficient for her to lie down on her stomach and extend her feet backward; that she crouched down and as she started forward and over the turn downward she extended her legs backward and upward and her right leg caught in the opening of this balustrade. Summarizing her evidence on this point, she said that her brother stepped over into the slide and sat down with his back to the north and his feet south; that she then stepped into the slide and was going to sit down and her brother told her to turn around so as to lay

on her stomach, and after she did this she sat in a crouching position with her hands on the side and her feet in position. As we started to go down I drew my feet back and felt a stinging sensation. I felt this stinging sensation above my knee where it broke, in the right leg. My right leg seemed to catch at the right-hand side of the chute at the back. I also had a numb feeling which came on me just as I started to go down the slide. My brother was facing south with his back to the north and had his hands on the sides and his feet and knees drawn up. I was facing north. I was stopped or retarded as I took off and there was a pause just for an instant. I was right behind my brother between his knees and his ankles. After I left the top and started to slide down I was not stopped at any time and did not strike anything. I kept on going until I struck the water. When my brother lifted me out of the water my leg looked as if I had two knees. My leg was bruised or scratched between the knee and thigh on the front side. Then there was a scratch or bruise on the calf of my leg below the knee. Plaintiff was carried into a building, an ambulance called, and she was taken to a hospital where her broken leg was set and she received medical treatment.

On cross-examination plaintiff said she was barefooted and when she started to sit down she held to these two eight-inch boards that were on the side. My brother's feet and legs were stretched out and as I went forward on my stomach my head was between his knees and his ankles. As to what happened when I started down, why, just as I started to go down I hung, my leg caught on something on the back side, just as I started to go down, and broke. This water pipe was about a foot and a half (?) back from where the slide turns downward. I was about a foot or a foot and a half back of the pipe. As I crouched down my back was right up against the rear end of the slide, just touching it. I was in that position just as I started down. Just as I started to go down I pulled myself forward and struck my feet backward and lay down on my stomach. I first hit the slide on my breast just before it turned downward.

The evidence shows that there was a small water pipe extending across the bottom of the slide or chute for the purpose of keeping it wet. Just how close this water pipe was to the downward turning point of the slide is not accurately shown, but it must have been some eight to ten inches. Plaintiff says that preparatory to making the descent she crouched down back of this pipe and that her back was then nearly touching the end of the chute. Plaintiff's theory of the accident as presented here is that the bruised place across the front of plaintiff's thigh, between the knee and the hip, was made by this water pipe located near where the slide turned down, and that the bruised or skinned place on the calf of plaintiff's leg was made by its striking the cross piece or railing of the balustrade some two feet

higher than the end baseboard; that as plaintiff hit the slide and started down on her stomach the calf of her leg would be caused to strike the under side of the railing; that the leverage produced by her weight as her body passed over the curved part of the slide and downward threw the calf of her leg upward against the under side of the railing. She said that as her leg caught she paused for an instant and felt the jerk and stinging sensation followed by a numbness in her leg. It is claimed that the points of contact indicated by the marks of traumatism on the leg are convincing evidence that the leg was caught and entrapped at the railing and at the turning point of the slide.

The difficulty we meet in applying this argument to the physical facts is that plaintiff's body must have been at least half over this downward turn in the slide before gravity would take effect. In fact, she says that she pulled herself forward in making the start. When the body was half over the turning point downward, if she was then stretched out, being five feet in length, on her stomach, her feet would just about reach the end baseboard, certainly very little more. This position would place the point of fracture of the thigh just about over the water pipe, some eight or ten inches from the downward turning point. From this point of traumatism on the thigh to the other point of traumatism on the calf of the leg, was not over twelve to fifteen inches. When we recall that the railing against which the calf of her leg came in contact was fourteen to sixteen inches further back and some thirty to thirty-two inches high, a serious question arises as to the possibility of the accident happening in this way.

The defendants' theory of how plaintiff was injured is also difficult to reconcile with the physical facts. The upright support near the middle of the slide against which defendants claim plaintiff struck her leg in her descent was nailed to the eight-inch sideboard and ended some five inches below the top of this sideboard and was also cut off at a slant away from the sideboard. Plaintiff, therefore, contends that it would be physically impossible for plaintiff, lying on her stomach with her brother's body under her, to so let her leg hang over the sideboard as to strike this slanting four by four upright, break her leg half way above the knee and leave a bruised spot over the point of fracture of the thigh and another on the calf of the leg. There is, however, no doubt that plaintiff received the injuries mentioned in going down this slide.

As this case will be reversed and remanded for other reasons, it may be that the evidence on another trial will explain and make more satisfactory some matters which we do not now understand in connection with this injury. We will not reverse the case absolutely on the ground that the court erred in overruling the de-

murrer to the evidence. [Nephler v. Woodward, 200 Mo. 179, 186, 98 S. W. 488.]

The conclusion is forced on us that the negligence of plaintiff's older brother is at least partially responsible for this accident. Plaintiff herself is largely excusable on account of her age, inexperience and unfamiliarity with this slide. The brother, however, says he was perfectly familiar with the mechanism and its operation and had used the same frequently. If, as alleged, the top or starting portion of this slide was not of sufficient length and size to properly admit plaintiff's body, the brother not only knew this condition but deliberately caused the same to be used by both himself and his sister at the same time. It might well be that the level starting part of the slide was of sufficient length and size to safely accommodate one slider, but not so for two, especially when the second one, nearer the dangerous end, was directed to place herself on her stomach and go down in that manner. The brother, however, is not a party to this suit and we mention this merely because defendants cannot be held liable for any negligent act of plaintiff's brother. If defendants were negligent and their negligence combined with the negligence of the brother in causing plaintiff's injury, defendants are nevertheless liable regardless of the brother's negligence.

The serious question in this case is whether, granting that plaintiff was injured by reason of her leg being caught or ensnared in the open balustrade at the end of the slide, defendants can be held liable because of the negligent construction of the same. The fact of plaintiff being injured does not of itself warrant a finding of actionable negligence. It is not enough to show that if the starting part of the slide had been built longer, or if the open space between the eight-inch end board and the railing had been built solid or closed by nailing boards over the open space, the accident would not have happened. The question is whether the danger to sliders of getting their legs caught in the open space was so apparent and obvious that a person of reasonable prudence and forethought would not have constructed the slide in the manner it was constructed or thereafter operated it in that condition. It is a trite saying that a person's "hindsight" is often better than his foresight, which merely means that a person, after a thing has happened, can see error or mistake or at least something which, if it had been done, would have prevented a bad result. However, negligence which imposes liability must result from a faulty or defective foresight. Negligence is predicated on what should have been anticipated, rather than what happened.

Plaintiff's principal instruction, the only one authorizing a verdict for plaintiff, very properly told the jury that defendants in operating for hire a place of public amusement owed the patrons the duty of using ordinary or reasonable care for their safety; and

that on this occasion it was defendants' duty to provide plaintiff as its patron a chute or slide free from unnecessary danger. This was a correct declaration of law in the abstract. [Berberet v. Electric Park Amusement Co., 319 Mo. 275, 281, 3 S. W. (2d) 1025; Steinke v. Palladium Amusement Co. (Mo. App.), 28 S. W. (2d) 440.] The instruction then says that if "plaintiff's right leg was caught and ensnared in the open balustrade, if you so find, on the back side of the top of said chute, if you so find, and thereby directly caused the plaintiff to receive the injury complained of; and if you further find that at said time and place the chute mentioned in evidence was so constructed that the top or starting point was not of sufficient length and size and did not afford ample space for the free use of plaintiff's limbs and body in that it was surrounded by a scaffold or other attempted protection which was open and likely to and did directly cause plaintiff's limb to be caught and ensnared while using the same, if you so find, and that plaintiff at said time and place was in the exercise of ordinary care for her safety, if you so find; and if you further find that defendants knew, or by the exercise of ordinary care could have known of the condition of said chute, prior to plaintiff's injury, if any, in sufficient time to have remedied said condition, but through negligence failed to do so, then your verdict must be for the plaintiff." The gist of this instruction is that if plaintiff's leg was in fact "caught and ensnared in the open balustrade," and that the starting point of the chute was not of "sufficient length and size" to afford "ample space for the free use of plaintiff's legs and body" in that it was enclosed by a scaffold or handrailing "which was open and likely to cause plaintiff's leg to be caught and ensnared," then to find for the plaintiff, provided defendants had sufficient time to have known of "such condition" and have remedied the same, but negligently failed to do so. This instruction assumes, without requiring the jury to so find, that it was negligence as a matter of law for defendants to construct and operate the slide in the condition mentioned, that is, without being of sufficient length and size to afford ample space for a slider's body and legs; and enclosed by a railing which was open and likely to catch and ensnare a slider's legs. Unless the condition described necessarily constituted negligence, then it was error to assume negligence merely because constructed that way. If reasonable minds might differ as to whether this condition showed or constituted negligence, then the jury should have been required to so find in order to find for plaintiff. The only act of defendants which the jury was required to find was negligent was in failing to remedy the defect. As said in Darks v. Grocer Co., 146 Mo. App. 246, 261, 130 S. W. 430, "In other words, the instruction does not require the jury to find that the acts complained

of constitute negligence. It simply states if the jury find the above facts, they shall find a verdict for plaintiff. The word 'negligence' or any kindred word, is not found in the instruction. Unless the conduct of the defendant, as shown by the uncontradicted evidence, was negligence, so that the court had the right to declare the acts to be such as a matter of law, it was error to give the instruction. . . . It will also be seen that in some cases the court is justified in declaring the act to be negligence as a matter of law.'' The jury should have been required to find not only that the slide in question was in fact constructed and operated in the condition mentioned, but that such construction was negligence, that is, such that a reasonably careful and prudent person would not have constructed and operated it in that condition. [Nephler v. Woodward, 200 Mo. 179, 188, 98 S. W. 488.] In speaking of that case in Berberet v. Electric Park Amusement Co., 319 Mo. 275, 283, 3 S. W. (2d) 1025, the court said: ''In the opinion in that case it was said the fault of plaintiff's main instruction was that it treated the hole in the carpet and the dim light, as it would treat facts which constitute an obvious danger; that the jury ought not to be left to judge by the result alone, that the alleged condition was dangerous; and that defendants would be liable as for neglect of duty only in case the condition was such that a reasonably prudent man engaged in that business, would, by the exercise of ordinary care, foresee or anticipate danger.''

We think also that the instruction was faulty in entirely ignoring the fact that two persons were using this slide at the same time. The instruction proceeds on the theory that plaintiff alone was using this slide and that its method of construction as to the length of the level or starting place at the top, enclosed by an open railing above the solid end board, was insufficient for one person to have free use of her legs. This is what the petition charges. While defendants do not allege that the only danger to plaintiff in using this slide arose from the fact that both she and her brother attempted to use it at the same time, yet such manner of use was shown by plaintiff's own evidence and therefore inhered in the case as made. Defendants are not without fault in also ignoring this phase of the case, but it is a close case and we cannot hold that it was fairly submitted to the jury on plaintiff's instruction.

We also hold that the court erred in not permitting the defendants to show why the level portion of this slide used in starting was not made longer. The plaintiff's instruction told the jury that defendants owed plaintiff the duty to provide a chute that was free from *unnecessary dangers.* Defendants offered to prove that one purpose of building this portion of the slide of the dimensions shown was to prevent more than one person getting on the slide at a time.

There was no objection made to this not being a proper matter for expert evidence or to the qualification of the witness being questioned. It might well be that a construction of the slide so as to be used by only one person at a time would conduce to greater safety, and a construction which would be a tacit invitation for its use by more than one at a time should be avoided. There is more or less danger inherent in pleasure devices of this kind, the element of danger entering into the "thrill." In constructing the device it is proper to consider whether the elimination of one source of danger might not incur a greater danger. The evidence was calculated to help the jury in determining whether the danger arising from the construction complained of was an unnecessary danger.

It is strenuously insisted that the verdict for ten thousand dollars is excessive. Perhaps it is, but the question may not arise on another trial, and if it does it will be better to consider it on the facts then presented.

The case is reversed and the cause remanded. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by STURGIS, C., is adopted as the opinion of the court. All of the judges concur.