## PLINSKY *v.* GERMANIA F. & M. INS. Co.

*(Circuit Court, E. D. Michigan.* January 11, 1887.)

1. FIRE INSURANCE—FORFEITURE—INCREASE OF RISK.

   An insurance policy provided that, if the risk should be increased by any means whatever within the control of the assured, without the consent of the company, the policy should be void. The property, which consisted of a stock of goods, was described as "contained in the first floor and basement of the building." *Held,* that a removal of the entire property from the first floor to the basement would not avoid the policy, though the risk were increased by such removal.

2. SAME—CONSTRUCTION OF POLICY—CONFLICTING CAUSES.

   Where a policy upon a "stock of candies, confectionery, toys, fruit, and all such other stock as is usually kept for sale in confectionery stores," provided that such policy should "cease and determine if * * * fire-works should be kept temporarily or otherwise in the stocks of merchandise * * * insured herein," it was held that, if fire-works were usually kept in stocks of the kind insured, the written part of the policy would control the printed part, and the keeping of fire-works would not avoid the policy.

3. SAME—LOSS—FRAUDULENT BURNING.

   Plaintiff was charged with the fraudulent burning of the property. The only evidence upon this point was that there was a social gathering in the store upon the evening before the fire; that plaintiff and her husband did not leave the place until 3 o'clock in the morning; that the husband closed the store for the night, took the key with him, and that they went directly to their house. The fire broke out a little after 6 in the morning, in the basement. The evidence was clear that some one had entered the building, and set the property on fire, and there was no evidence that the building had been broken into, or that any one but plaintiff's husband had the key to the outer door. *Held,* that there was no evidence that plaintiff herself was privy to the burning, and that she would not be affected by the fraudulent burning of the property by her husband.

4. WITNESS—DISCREDITING—DISCRETION OF COURT.

   Plaintiff's husband was asked, upon cross-examination, whether he was not out upon bail, charged with an assault with intent to murder. *Held,* that such question was within the discretion of the court, and its exclusion could not be claimed as error.

*(Syllabus by the Court.)*

On Motion for a New Trial.

This was an action upon a policy of insurance upon the following property owned by the plaintiff, viz.:

"$250 on her stock of candies, confectioneries, toys, fruit, and all such other stock as is usually kept for sale in confectionery stores; $100 on her soda fountain, generators, and appurtenances belonging thereto; $400 on her store, ice-cream parlor, and shop furniture and fixtures, including brick oven and belongings; $125 on her saloon furniture and fixtures, beer-pump, mirror, bottles, and glass-ware; $10 on her awning outside of building; $25 on her stock of wines, beers, liquors, and cigars; and $100 on her pool-table, balls, and cues,—all contained in the first story and basement of the three-story brick building occupied by the insured as a confectionery store, bakery, saloon," etc.

The defenses were (1) that the risk had been increased by the removal of the entire property from the first story to the basement of the building in which it was kept; (2) that fire-works were kept in the stock con-

trary to the provisions of the policy; (3) that the property was burned with the assent and connivance of the insured.

The jury returned a verdict for the plaintiff, and defendant moved for a new trial upon the grounds stated in the opinion of the court.

*George W. Radford,* for the motion.

*H. H. Swan,* for plaintiff.

Brown, J. 1. Exception was taken to the charge of the court, that if the plaintiff notified Duvernois, the local agent of the company in Detroit, that the property had been removed to the basement of the building, and he made no objection to such removal, the company could not defend upon the ground that such consent was not indorsed in writing upon the policy. This instruction may have been erroneous, although the authorities seem to be at variance upon the point; but in our opinion it is entirely immaterial, for the reason that the plaintiff was entitled to an instruction that, as matter of law, the removal of the goods to the basement was not an increase of risk, within the meaning of the policy. The language of the policy is that, "if the above-mentioned premises shall be occupied or used so as to increase the risk, * * * or the risk be increased by * * * any means whatever within the control of the assured, without the assent of the company indorsed hereon, the policy shall become void." The first clause of this provision, that if the premises shall be used and occupied, evidently applies only to buildings which have become the subject of insurance. The second provision must be construed in connection with the description of the location of the property as "contained in the first floor and basement of the building." It seems to us that this was a plain stipulation on the part of the company that the plaintiff should deal with her property as she chose, within the limits of the first floor and basement. She had no right to remove it from the building, nor to the second floor of the same building, but it could not reasonably be expected that the property would remain distributed between the first floor and basement precisely as it was the time the policy was executed. It was undoubtedly made with reference to the general practice of shop-keepers bringing goods up from the basement and placing them for sale on the first floor, and sending unsalable or deteriorated goods from the first floor to the basement, although it is possible that the risk might be sensibly increased by such transfers. If this may be done with respect to a part of a stock, I see no reason why it may not be done with respect to the whole of it. It would hardly be claimed that if the plaintiff had desired to place her entire stock in the basement on sale she would not have been at liberty to carry it to the first floor. So, if she saw fit to withdraw her entire stock from sale, I see no reason to doubt that she could send it down to the basement; there being no stipulation in the policy that any particular portion of the property should be kept either in the basement or upon the first floor. There can be no question that the insured, unless restricted in some way by the policy, might use, protect, and enjoy her property, as such property is customarily used, enjoyed, and protected;

and to infer, without an express provision or necessary implication arising out of the contract itself or public policy demanding it, that the insured surrendered all right to make the usual changes of or additions to her property as its safety or her convenience or comfort might suggest, is a construction too rigorous to be rational. May, Ins. 247; *Jolly* v. *Equitable Soc.*, 1 Har. & G. 295; *Shaw* v. *Robberds*, 6 Adol. & E. 75.

Within the literalism of the policy, the transfer of any portion of the goods from the first floor to the basement would be an increase of risk, and would avoid the policy, if the theory of the plaintiff be true that such removal of the entire stock had this effect.    Wood, Ins. § 238.

There is much force, too, in the suggestion that there was no evidence of an increase of risk by the removal of this stock to the basement. The only testimony tending in that direction was that, by the removal to the basement, the goods became second-hand goods.    This would not, of itself, increase the risk of an accidental burning; for it was not pretended that the goods were not as safe in the basement as upon the first floor.    Conceding that it would increase the temptation to a fraudulent destruction of the property, it may well be replied that the company did not insure against such fraudulent destruction.    Upon the theory of the defendant, the insolvency of the plaintiff or the suspension of her business in any way would depreciate her stock, or, to use the words of the witness, "make it second-hand goods," and thus operate to increase the risk of its fraudulent destruction.    Upon this theory, the insolvency of a merchant would at once invalidate every policy of insurance upon his goods.    It seems to us that the increase of risk contemplated by the policy was the introduction of new and hazardous goods, new or unusual methods of heating or lighting, or some other means which subjected the goods to an additional danger of an accidental fire.

2.  The second objection is that the court admitted testimony that fireworks were usually kept in stocks of confectionery and toys, and hence that the keeping of such fire-works did not avoid the policy, notwithstanding its provision that it should "cease and determine if  *  *  * fire-works shall be kept, temporarily or otherwise, in the stocks of merchandise  *  *  *  insured herein."  This provision, too, must be construed in connection with the written portion of the policy, which insured "her stock of candies, confectionery, toys, fruit, and all such other stock as is usually kept for sale in confectionery stores."   The rule in such cases is well settled that, if the prohibited article be usually kept in the stock insured, the written part of the policy shall control the printed portion, and the keeping of the prohibited article will not avoid the policy.    The Massachusetts cases are the other way, but the law is too firmly settled to be disturbed.   Wood, Fire Ins. 169, 170.

In this connection the case of *Steinbach* v. *Insurance Co.*, 13 Wall. 183, was relied upon by the defendant.    This was a suit upon a fire policy upon a stock of fancy goods, toys, and other articles "contained in the brick building," etc., "and now in his occupancy as a German jobber and importer, privileged to keep fire-crackers on sale."   The insured not only kept fire-crackers on sale, but fire-works, which were classed as

hazardous, and for which an extra premium was charged. The court held the policy to have been avoided, apparently upon the ground that the privilege to keep fire-crackers on sale was an exclusion of the right to keep other hazardous articles, notwithstanding the testimony that fire-works constituted an article in the line of business of a German importer. In this particular the case is distinguished from the one under consideration. If it were not, of course I should feel compelled to follow it, notwithstanding its authority was repudiated by the court of appeals of New York, (*Steinbach* v. *Insurance Co.*, 54 N. Y. 90,) and has been gravely doubted by other courts. See *Stout* v. *Insurance Co.*, 12 Fed. Rep. 554. If there had been a special provision in the written portion of the policy, permitting certain hazardous articles to be kept, we should have held, following this case, that there was an implied prohibition of other hazardous articles, upon the familiar principle, *expressio unius est exclusio alterius.* But we think that the undisputed testimony that fire-works were kept as an ordinary portion of a stock of confectionery and toys was clearly admissible.

3. There was no error in the instruction that there was no testimony connecting the plaintiff with the burning of the property. The only evidence upon this point was that there was a social gathering in the store upon the evening before the fire; that the plaintiff and her husband did not leave the place until 3 o'clock in the morning; that the husband closed the store for the night, took the key with him, and that they went directly to their house. The fire broke out a little after 6 in the morning, in the basement. The evidence was clear that some one had entered the building, and had set the property on fire, and there was no evidence that the building had been broken into, or that any one but the plaintiff's husband had the key to the outer door. The jury were instructed that, although there was evidence sufficient to be submitted to them that the husband had burned the property, it was not material in this case, as there was no evidence to connect the plaintiff with it,—to show that it was done with her assent or connivance; and that plaintiff would not be affected by the fraudulent burning of the property by her husband. Whether he set the fire before he left the building, or returned there after having gone to his house, was immaterial, without some evidence connecting her with the arson. While the facts were such as to excite a grave suspicion of the wife's connivance, they were not such as to legally entitle this defense to be presented to the jury. There can be no question of the legal proposition that the wife is not chargeable with the fraudulent conduct of her husband, notwithstanding he may have been her agent in the management of the property and the conduct of her business.

4. There was no error in ruling out the question to the witness Plinsky, whether he was not out upon bail charged with an assault with intent to murder. Whether such a question should be permitted or not we think was in the discretion of the court, and its exclusion cannot be claimed as error.

The motion for a new trial must be denied.