545 F.Supp. 74 (1982)
George WEAVER, Plaintiff,
v.
METROPOLITAN LIFE INSURANCE COMPANY, Defendant.
No. S80-0031C.
United States District Court, E. D. Missouri, Southeastern Division.
April 28, 1982.
On Motion to Set Aside Judgment August 6, 1982.
*75 Mark Kennedy, Poplar Bluff, Mo., C. H. Parsons, Jr., Parsons & Mitchell, Dexter, Mo., for plaintiff.
John L. Oliver, Jr., Rebecca Cook, Oliver, Oliver, Waltz & Cook, Cape Girardeau, Mo., for defendant.

MEMORANDUM
WANGELIN, Chief Judge.
This matter is before the Court for a decision on the merits following a one day trial held November 11, 1980. Plaintiff seeks judgment on a two count complaint which includes claims of fraudulent misrepresentation and a willful, malicious, and wanton deprivation of plaintiff's contract rights under a policy of insurance issued by defendant. Plaintiff prays for an accounting, a refund of all premiums not returned to the plaintiff or, in the alternative, Fifteen Thousand One Hundred and Fifty Nine Dollars ($15,159.00) (the cash value of the policy) plus punitive damages.
After consideration of the testimony adduced at trial, the exhibits introduced into evidence, the briefs of the parties, and the applicable law, the Court hereby makes and enters the following findings of fact and conclusions of law. Any finding of fact equally applicable as a conclusion of law is hereby adopted as such and conversely, any conclusion of law equally applicable as a finding of fact is hereby adopted as such.

Findings of Fact
1. Plaintiff herein, George Weaver, was at all relevant times herein a resident of the State of Missouri. Defendant, Metropolitan Life Insurance Company (hereinafter Metropolitan), is a corporation organized and existing under the laws of the State of New York with its principal place of business being the State of New York.
2. Plaintiff was injured in World War II and has been rated with various percentages of total and permanent disability since that time. Mr. Weaver first applied for a policy with defendant when he was rated ninety per cent (90%) disabled by the Veterans Administration and, but for one six month period, has not performed physical labor since 1963.
3. On July 9, 1974 plaintiff applied for a uniform annual decreasing term life insurance policy with a waiver of premiums upon disability benefit providing that should he become totally disabled, his payment of premiums would no longer be necessary to have the policy continue in effect. Mr. Weaver supplied the medical information which Metropolitan required when its applicants desired the waiver of premiums benefit. James Maddox, who sold plaintiff this policy, delivered the policy to the Weaver residence on September 20, 1978. The policy did not contain the waiver benefit, and in George Weaver's absence his wife signed the policy and accepted it for plaintiff. Mrs. Weaver stated that Maddox told her only that she needed to sign the document *76 to show that she had received it. Metropolitan had denied the waiver benefit on this policy and Maddox did not relate this to Mrs. Weaver. Nevertheless, Mrs. Weaver knew she did not have the waiver benefit, and knew she was not being charged for it.
4. Subsequently, Mr. Weaver expressed his dissatisfaction with this policy (No. XXXXXXXXXA) and sought a new policy. Mr. Donald Clayton wrote a new application converting the former term policy into a permanent whole life policy. Although Weaver testified that Clayton promised that the waiver of premiums benefit would be included, the application did not reflect a request for this benefit. No additional medical information was provided by Weaver, but Clayton assured him that all this was unnecessary, and that plaintiff would receive this feature. Between Weaver's application for his first and second policies, he underwent surgery in August of 1974, and knew in July of the following year that he was to be operated on again.
5. On May 18, 1975, Weaver received the second policy. The premium for the second policy of Seventy Six Dollars and Fifty Cents ($76.50) continued with an adjustment for Weaver having preauthorized drafts from his checking account to cover the amount of the premium. This was the amount that Clayton had assured plaintiff represented the cost of a policy with the waiver of premium benefit for a person of his age. Clayton used "sales aids" provided by defendant which indicated that for that particular premium price he would receive the waiver of premium in the event of disability benefit. Although the policy did not contain the waiver provision, Weaver never received a refund. Contrary to the representations of Clayton, the factors used by Metropolitan in deciding whether to extend the waiver of premium benefit  age relative to retirement and work history  would have precluded Weaver from receiving the benefit.
6. On October 1, 1975, Weaver became disabled within the meaning of the insurance contract, and contacted Clayton to process a claim for the waiver of his premiums. Clayton perfidiously stated that Weaver was required to wait two years before making such a claim. Twenty seven months later, and after having continued to pay full premiums for this period, Weaver again contacted Clayton about filing a claim. On May 8, 1978, Clayton finally processed the proper claim forms. On June 2, 1978, Weaver was notified that his claim was rejected since the waiver of premium benefit was not contained in his policy. Although there existed considerable uncertainty over the amount of Weaver's monthly premium, (Weaver was supposed to receive a discount of some amount for the preauthorization of the premium payment), and also if the premium he paid corresponded to the proper payment for waiver of disability protection, this Court finds that the evidence of full payment for such protection more persuasive. Throughout these events and even after the denial of the benefit by defendant, Clayton continued to assure Weaver that the policy did contain this benefit, and that he would rightly receive it.
7. Weaver, after substantial consternation over the treatment he received, cancelled his policy and received One Thousand Twenty Three Dollars ($1,023.00) from defendant. In sum, plaintiff had paid premiums on both policies totaling Three Thousand Ninety Dollars and Eighty Two Cents ($3,090.82). The cash value of the policy which Weaver was told by Clayton he had, including the waiver benefit, is Fifteen Thousand One Hundred Fifty Nine Dollars ($15,159.00).

Conclusions of Law
This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332 and 1441 since plaintiff George Weaver is a citizen of the State of Missouri and the Metropolitan Life Insurance Company, Inc. was incorporated and has its principal place of business in the State of New York, and this cause was removed from the Circuit Court of Butler County, Missouri.
Mr. George Weaver, plaintiff herein, seeks recovery against Metropolitan for *77 acts largely done by Metropolitan's agent, Donald Clayton. Mr. Clayton is not a party to this action, and it is apparent from the facts herein, that plaintiff may have foregone a viable cause of action against Clayton for his false representations to the effect that Weaver was indeed covered by the waiver of premium benefit. Cf. Pittman v. Great American Life Insurance Company, 512 S.W.2d 857 (Mo.App.1974), also 64 A.L. R.3rd 398.
The question remains as to whether the potential wrongs by Weaver may properly be imputed to Metropolitan by means of the law of agency.
It is normally held that a principal is responsible for acts of agents if the agent is acting within the scope of authority, even though the agent acts with fraudulent intent. Smith v. New York Life Ins. Co., 208 F.Supp. 240 (S.D.Iowa 1962); McDonald v. Afro-American Life Ins. Co., 490 S.W.2d 891 (Tex.Civ.App.1973). "In the absence of fraud on the part of the insured and agent, an insurance company is bound by all acts, contracts, or representations of its agent, whether general or special, which are within the scope of his real or apparent authority, notwithstanding they are in violation of private instructions or limitations on his authority, of which the person dealing with him, acting in good faith, has neither actual nor constructive knowledge." Baker v. St. Paul Marine Ins. Co., 427 S.W.2d 281 at 285, 286 (Mo.App.1968), quoting 44 C.J.S. Ins. § 149, pps. 817 to 818. Limitations upon the authority of the agent are not binding upon the insured unless the limitations are known or brought to the notice of the insured. Distassio v. American United Life Ins. Co., 238 Mo.App. 279, 179 S.W.2d 610 (1944); Appleman, Ins. Law and Practice, § 8674. No such notice was brought to the attention of Mr. Weaver, nor was Mr. Weaver aware of any such limitations.
Mr. Weaver would appear to be precluded from recovery in contract, since in the absence of proven authority, an agent cannot change written terms of a policy by oral contract. Appleman, Ins. Law and Practice, § 9206. The contracts for insurance herein do not contain the waiver of premiums in the event of disability benefit even though Metropolitan's agent continually asserted that it did. And although it is normally the law that an agent cannot bind the insurer with his unauthorized representations to the insured, an insurer is bound by the agent's acts which are within its apparent authority, though not actually granted, when the insurer knowingly permits the agent to exercise such authority. Travelers Indemnity Co. v. Beaty, 523 S.W.2d 534 (Mo.App.1975). Certainly Weaver had a right to assume in these circumstances that Metropolitan had conferred upon Clayton the authority to relate the company's position as to his policy. Cf. Lanowah Investment Co. v. John Hancock Mutual Life Insurance Co., 236 Mo.App. 1062, 162 S.W.2d 307 (1942).
By means of its acceptance of plaintiff's premiums in the amount corresponding to a proper payment for the waiver of premium benefit, and the use of the ambiguous "sales aids" herein to demonstrate (obfuscate) their policy's features to plaintiff, Metropolitan ratified representations and practices of agent Clayton which plaintiff relied on in purchasing and paying for the policy of insurance herein. The authority of Clayton to act on Metropolitan's behalf was manifested by these acts. Cf. National Surety Corp. v. Inland Properties, 286 F.Supp. 173, 180 (E.D.Ark.1968). The retention of the premiums by Metropolitan with knowledge of facts (i.e. Weaver's disability) which render the policy void, waives the right to enforce the forfeiture provision. New York Life Ins. v. Chapman, 132 F.2d 688 (3rd Cir. 1943), cert. denied, 319 U.S. 749, 63 S.Ct. 1158, 87 L.Ed. 1704. This rule certainly applies to a feature (waiver of premiums in the event of disability) of a policy, as well as the efficacy of an entire policy.
Metropolitan is also imputed with the tort liability for acts of Mr. Clayton in accordance with the law of respondeat superior. Metropolitan is responsible for the injury to plaintiff by any negligence or *78 misconduct of which the servant is guilty while acting within the scope of employment. Burks v. Leap, 413 S.W.2d 258 (Mo. 1967), for similar case employing agency theory, see Smoot v. Marks, 564 S.W.2d 231 (Mo.App.1978). A master is liable for the malicious and willful acts of its servant notwithstanding that the agent was acting in excess of his authority. Flynn v. Burgess, 259 S.W. 147 (Mo.App.1924). Metropolitan is therefore responsible for damages suffered by Weaver precipitated by the misrepresentations of Mr. Clayton. See also Appleman, Ins. Law and Practice, § 8890.
Although defendant's conduct does not rise to the level of culpability which would justify the imputation of punitive damages, plaintiff purchased and paid for a policy the actual paid-up value of which has been agreed to be Fifteen Thousand One Hundred Fifty Nine Dollars ($15,159). When the policy was cashed out, Weaver received One Thousand and Twenty Three Dollars ($1,023) representing the cash value of the policy at that time. The difference, Fourteen Thousand One Hundred and Thirty Six Dollars ($14,136) represents the amount properly owed to plaintiff representing the damages suffered by plaintiff due to the misrepresentations of Mr. Clayton which can be imputed to and were ratified by the Metropolitan Life Insurance Company. Judgment in that amount and in favor of plaintiff is appropriate.

ON MOTION TO SET ASIDE JUDGMENT
This matter is before the Court upon defendant's motion to set aside a judgment or in the alternative to amend the judgment to reduce the plaintiff's recovery. Defendant objects to various portions of this Court's findings of fact on the grounds that this Court erroneously "failed to find" various facts which, if found, would cause judgment to properly be entered on defendant's behalf. Upon review of each of these contentions, this Court finds them of little merit. The credible evidence demonstrated that plaintiff was the victim of a gross misrepresentation on the part of defendant's agent, that contrary to the terms of the insurance contract, defendant agent held himself out as having the authority to bind the company and assure plaintiff that he indeed was covered under the waiver of premiums in the event of disability provision of the policy.
Defendant also urges a substantial reduction in the amount of damages properly awarded plaintiff. Only the actual out-of-pocket losses (the premiums paid) should be awarded less the amount refunded (as cash value) to plaintiff upon cancellation, are the proper amount of damages. However, plaintiff paid for coverage including this benefit. This benefit provided that if plaintiff should become disabled, payment of the premium would no longer be necessary to keep the policy in effect. This contingency occurred, plaintiff became disabled, and under the terms of the representation made to him, he is deserving of the paid-up value of the policy he purchased.
The paid-up value of the policy was Fifteen Thousand One Hundred Fifty Nine Dollars ($15,159); the refund plaintiff received was One Thousand Twenty Three Dollars ($1,023). Accordingly, judgment in the amount of Fourteen Thousand One Hundred Thirty Six Dollars ($14,136) is proper. It is therefore proper to deny defendant's motion for a new trial and for an alteration of this Court's judgment of April 28, 1982.
It Is So Ordered.